*E-Filed 10/12/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN G. WARNER,

        Plaintiff and Appellant,

  v.

JOSEPH REITER,

        Defendant and Appellee.
_____/

No. C 09-06030 RS

**ORDER AFFIRMING JUDGMENT OF THE BANKRUPTCY COURT**

## I. INTRODUCTION

Appellant John G. Warner, an attorney appearing in *pro se*, challenges the Bankruptcy Court's entry of summary judgment on his complaint in this adversary proceeding in the bankruptcy of Joseph and Kelley Reiter. Because Warner has failed to demonstrate any error by the Bankruptcy Court, its judgment will be affirmed.

## II.  BACKGROUND

This bankruptcy appeal arises from a long and unfortunate history of collateral litigation that grew out of an incident in 1991 when a scuffle erupted during an attempt by a process server to deliver legal papers to the mother of defendant Joseph Reiter in an unrelated action.  Reiter sued the process server, Andrew Musaelian, both as an individual and under his fictitious business name, "Attorney's Legal Research."   Despite the fact that Attorney's Legal Research was not a separate legal entity from Musaelian, and even though Musaelian had appeared and defended the suit, Reiter managed to persuade a state court to enter a half-million dollar default judgment against "Attorney's Legal Research," which he then sought to enforce by executing against a home owned by Musaelian's wife.  The Musaelians eventually sought bankruptcy protection, and obtained a ruling from the Bankruptcy Court and the Bankruptcy Appellate Panel that the default judgment was unenforceable against their personal assets.

Musaelian's wife, represented by appellant Warner, then filed suit for abuse of process against Reiter and his attorney, which they successfully defended by arguing that the actions taken to obtain and enforce the default judgment against "Attorney's Legal Research" were protected by the litigation privilege.  A sanctions order of approximately $47,000 was entered against Warner, and in favor of Reiter, representing the fees Reiter incurred in defending the abuse of process claims.  An additional sanctions award of approximately $25,000 issued against Warner in favor of Reiter's attorney for fees he had "incurred" in representing himself.  Warner appealed the sanctions order and obtained a ruling from the state appellate court that (1) he had not engaged in sanctionable conduct, and (2) Reiter's attorney could not recover fees in any event, because he had represented himself in defending the abuse of process action.

The California Supreme Court then granted review, limited to the question of whether an attorney who represents himself is precluded from recovering attorney fees as a sanction.  Because the question on review was limited, the reversal of the fees awarded to Reiter was not before the California Supreme Court, although Reiter did file a motion asking the court to extend any ruling it made in his attorney's favor to benefit him as well.  The California Supreme Court ultimately ruled

that Reiter's attorney could not recover fees for having represented himself, and it denied Reiter's motion (then moot) to have the ruling extend to his benefit.

After the state court of appeal had reversed the sanctions awarded to Reiter, but while review on the limited question of whether Reiter's attorney could recover fees for representing himself was still pending, Reiter and his wife filed for bankruptcy. They listed Warner as a creditor, but did not list the overturned sanctions order against Warner as one of their assets. The Reiters obtained a discharge of their pre-petition debts.

Once the California Supreme Court had ruled, Warner sought to recover his appellate costs against Reiter by initiating the adversary proceeding that is the subject of this appeal. Reiter filed a motion to dismiss, which the Bankruptcy Court elected to treat as a motion for summary judgment. The court ruled that Warner was not entitled to set aside Reiter's discharge and to recover his state court appellate costs on any of the three grounds alleged in the adversary complaint. This appeal followed.

## II.   DISCUSSION

### A.   Standard of Review

When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit court would use in reviewing a decision of a district court. *See Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997). Therefore, "findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, de novo." *Christensen v. Tucson Estates* (*In re Tucson Estates*), 912 F.2d 1162, 1166 (9th Cir. 1990).

While Reiter's motion was filed as a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6), the Bankruptcy Court elected to treat it as a motion for summary judgment, a decision that Warner does not challenge on appeal. A grant of summary judgment is reviewed de novo. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). The evidence must be reviewed in the light most favorable to Warner, the non-moving party, to determine if there are any genuine issues of material fact and whether the Bankruptcy Court

correctly applied the substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The decision may be affirmed on any ground supported by the record. *Id.*

B. <u>Revocation of Bankruptcy Discharge</u>

Pursuant to 11 USC § 727(d)(1), Warner seeks to revoke the Reiters' bankruptcy discharge on grounds that they purportedly committed fraud by failing to list the sanctions award as a potential asset of the estate. The sanctions award in dispute was reversed by the state appellate court in July of 2007. Although Reiter had sought review in the California Supreme Court of that decision, the review granted was specifically limited to the issue of whether *Reiter's attorney* could be denied fees as sanctions where he had represented himself in defending the abuse of process claim. Thus, at the time when the Reiters filed their bankruptcy petition in December of 2007, and when they filed schedules of their assets and liabilities in March of 2008, there was no existing sanctions award in their favor to list as an asset, nor was there any pending review of the appellate decision reversing the award.

Warner appears to concede that it would have been proper for the Reiters to omit the sanctions award from the listing of their assets if they had thereafter made no further efforts to obtain a ruling from the California Supreme Court that would inure to their benefit. Warner argues, however, that when Reiter filed a motion in April of 2008 requesting that any reversal in favor of his former counsel also extend to the sanctions award he had received, he thereby was attempting "to have his cake and eat it too"—i.e. Reiter was seeking discharge of his obligation to pay appellate costs to Warner (and debts to other creditors) while preserving his right to seek reinstatement and recovery of the sanctions award.

Warner may very well be correct that upon the filing of bankruptcy, Reiter's entitlement to pursue the sanctions award, however remote or tenuous it may have been, became property of the bankruptcy estate and subject to control of the bankruptcy trustee. *See Turner v. Cook*, 362 F.3d 1219, 1225-1226 (9th Cir. 2004) (observing that when a debtor declares bankruptcy, "all the 'legal or equitable interests' he had in his property became the property of the bankruptcy estate and are represented by the bankruptcy trustee. . . . Causes of action are among such legal or equitable

No. C 09-06030 RS
ORDER

4

interests."). Thus, while it would not have been fraudulent to omit the sanctions award from the asset schedules if Reiter subjectively believed there was no chance for it to be reinstated and he had no intent to pursue it, Reiter likely lacked standing to request relief from the California Supreme Court once he had filed bankruptcy, absent abandonment of the claim by the trustee. *See Turner*, 362 F.3d at 1226.

Nevertheless, even if it were improper for Reiter to pursue reinstatement of the sanctions award in his own name after seeking bankruptcy protection (whether or not he listed it among his assets), that does not rise to a fraud that would justify revoking the bankruptcy discharge. It is undisputed that Reiter's motion in the California Supreme Court was denied, and that the sanctions award was never reinstated. Were the bankruptcy discharge to be set aside now, there would be no additional previously undisclosed assets from which to satisfy the claims of Warner or any other creditor.[1] The omission of the reversed and never-reinstated sanctions award from the assets schedule was therefore not material to the discharge the Reiters obtained, and resulted in no advantage to them nor harm to Warner. The Bankruptcy Court did not err in rejecting Warner's claims under 11 USC § 727(d)(1).[2]

C.   Post-Petition Claims

The state appellate court's decision establishing Warner as a prevailing party entitled to recover costs issued in July of 2007, some five months prior to when the Reiters filed their bankruptcy petition. Based thereon, Warner was duly listed as a creditor in the Reiters' bankruptcy

---

[1] If Reiter had succeeded in obtaining reinstatement of the sanctions award without ever disclosing it prior to obtaining a discharge, creditors other than Warner might have had grounds to complain. Warner himself, however, would not have suffered any cognizable injury, however, as he would have no longer been a prevailing party entitled to claim appellate costs against Reiter.

[2] Warner' complaint and his opening brief on appeal raised an additional but related contention that Reiter should be estopped from asserting the bankruptcy discharge as a defense to Warner's claim for appellate costs. On reply, however, Warner acknowledges the existence of precedent weighing against this argument, and he expressly withdraws it.

1  schedules. Warner's attempt to characterize all or at least some of his claim as arising post-petition
2  merely because there were further proceedings in the California Supreme Court is not persuasive.

3  It appears that a substantial part of the costs Warner is claiming is interest on a bond he was
4  required to post during the pendency of his appeal to the state appellate court.  While Warner faults
5  Reiter for the filings he made in the California Supreme Court subsequent to filing bankruptcy, he
6  has not shown how that conduct precluded him from obtaining discharge of the bond once the
7  sanctions order in Reiter's favor had been reversed, or how that interest is otherwise materially
8  different from interest that ordinarily continues to accrue on pre-petition debts after a bankruptcy but
9  that is nonetheless subject to discharge.[3] Finally, even assuming that the state courts would
10 recognize Reiter as having been a "party" to the review proceedings in the California Supreme
11 Court who might be jointly and severally liable with his former attorney for costs incurred
12 specifically in that court subsequent to the bankruptcy filing, Warner has failed to identify any such
13 costs that would otherwise be recoverable.  Accordingly, the Bankruptcy Court's conclusion that
14 Warner is not entitled to recover his appellate costs as a post-petition debt is not erroneous.

16  D.  "Ghostwriting"

17 Reiter is appearing as a *pro se* litigant in this matter, and his original appellee's brief was
18 filed under his name only.  Warner moved to strike the brief, asserting that it "clearly" has been
19 researched and drafted by an attorney, not Reiter himself.  Based on the fact that the brief had been
20 sent to the Court for filing under a cover letter from attorney Mark T. Clausen, who represented
21 Reiter in the underlying state court proceedings, Warner also moved to impose sanctions against
22 Clausen.

23 In response, Reiter sought leave to file an amended appellate brief that corrected a prior
24 violation of the page limits rule and that was clearly identified as having been prepared "with the

---

[3] Warner's opening brief also lists "attorney's fees" as a significant component of the costs he is claiming, but he has not suggested there is any contractual or statutory right to recover such fees.

assistance" of Clausen, although Clausen still did not appear as counsel of record for Reiter.[4]  The request to file the amended brief was granted, and the issue of whether Clausen had engaged in sanctionable conduct was deferred until this juncture.

Warner correctly points out that several courts have condemned the practice of "ghostwriting"—whereby a member of the Bar "guides the course of litigation while standing in the shadows of the Courthouse door." *Ricotta v. State of Cal.*, 4 F.Supp.2d 961, 987 (S.D.Cal. 1998); *see also* ABA Informal Opinion (1978), as quoted in *Ricotta* ("extensive undisclosed participation by a lawyer . . . that permits the litigant falsely to appear as being without substantial professional assistance is improper." ).  As the *Ricotta* court also noted, however, there is a "lack of clearly defined rules prohibiting such a practice." *Id*. at 986.

Here, even if Warner had not called attention to the issue with his motion to strike and for sanctions, there was little risk that the Court would have been misled into believing that Reiter's brief had been prepared by someone without legal training and that it was therefore entitled to the full deference given to *pro se* pleadings.  Reiter's original brief listed his address as "in care of" Clausen, and it was sent to the Court under a cover letter on Clausen's letterhead.  Thus, there does not appear to have been any attempt to deceive.

The primary purpose, therefore, of the "ghostwriting" appears to have been to allow Clausen to evade his obligation to be or to become a member of the bar of this Court prior to practicing in this forum.  The rules requiring such membership facilitate the Court's ability to ensure that attorneys practicing before it adhere to standards of competence and professionalism generally, and that they are familiar with the rules and procedures that specifically apply here.  *See* Civil Local Rule 11-1(c).

Under these circumstances, the appropriate sanction is to require Clausen to pay to the Clerk of the Court the sum $275, an amount equivalent to the fee he would have incurred had he complied with the rules in the first instance.  At Clausen's option, in lieu of paying the fee as a sanction, he

---

[4]  Clausen is not presently admitted to the bar of this Court, and is therefore ineligible to appear. *See* Civil Local Rule 11-1.

No. C 09-06030 RS
ORDER

7

may apply for admission to the bar of the Court, pursuant to the procedures set out in Civil Local Rule 11.

### III.   CONCLUSION

The judgment of the Bankruptcy Court is affirmed.  Within 20 days of the date of this order, Mark T. Clausen, Esq. shall pay the sum of $275 to the Clerk of the Court, or shall submit an application for admission to the bar of this Court, including the admission fee.

IT IS SO ORDERED.

Dated: 10/12/10

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

Joseph Reiter
396 Spring Beauty Court
Windsor, CA 95492

Mark Todd Clausen
Law office of Mark T. Clausen
18 E Fulton Road
Santa Rosa, CA 95403

DATED:  10/12/10

/s/ Chambers Staff
Chambers of Judge Richard Seeborg